Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3267 | **DATE** | 11/20/2000 |
| **CASE TITLE** | MARKET STREET SECURITIES vs. RACING CHAMPIONS CORP., et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions to dismiss [21-1] and [22-1] are denied. The defendants are directed to answer the consolidated class action complaint by December 4, 2000. The parties are directed to comply with Federal Rules of Civil Procedure 26(a)(1) by December 7, 2000.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | NOV 21 2000 | 34 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 11/20/2000 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| SB courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 NOV 20 PM 6:29 Date/time received in central Clerk's Office | jad mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARKET STREET SECURITIES, Individually and on behalf of all other similarly situated, et al., <br><br> Plaintiff, <br><br> v. <br><br> RACING CHAMPIONS CORP., ROBERT DODS, CURTIS STOELTING, VICTOR SHAFFER, <br><br> Defendants. | No. 00 C 3267 <br><br> Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Market Street Securities ("Market Street") brings this action on behalf of itself and the class it seeks to represent for securities violations.[1] The proposed class consists of all persons who purchased Racing Champions common stock between February 1, 1999 and June 23, 1999 ("class period") and suffered losses as a result. Consolidated Class Action Complaint ("Cmplt.") ¶ 1. Plaintiffs name the following defendants: Robert Dods ("Dods"), Curtis Stoelting ("Stoelting"), Victor Shaffer ("Shaffer") (collectively "individual defendants"), and Racing Champions Corporation ("Racing Champions") (collectively "defendants"). Plaintiffs allege defendants intentionally made material misrepresentations to artificially inflate and maintain the trading price of Racing Champions common stock in violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Rule 10b-5") (Count I). Plaintiffs further allege individual defendants are liable under Section 20(a) of the Securities Exchange Act of 1934 ("§ 20(a)") because they are controlling persons of Racing

---

[1] A motion for class certification is pending.



Champions (Count II). Defendants move to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P 12(b)(6) and for failure to plead with particularity as required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(A), and Fed.R.Civ.P. 9(b) ("Rule 9(b)").[2]

## BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Racing Champions is a producer of die-cast racing replicas and racing-related merchandise. Cmplt. ¶ 9. Dods, Meyer, Stoelting, and Shaffer were directors of Racing Champions during the class period. *Id.* ¶ 10. As of January 15, 1999, the individual defendants were beneficial owners of Racing Champions common stock. *Id.* In May 1999, Shaffer sold 51,500 shares of his stock within a three week period. *Id.* ¶ 11. This number of shares amounted to 61% of his total holdings. *Id.* Prior to May 1999, Shaffer had not sold any shares since first acquiring them in January 1998. *Id.*

Racing Champions grew substantially in 1998. *Id.* ¶ 19. A significant factor in the company's growth was the popularity of a new line of NASCAR automobile miniatures. *Id.* Racing Champions introduced the miniatures in celebration of its 50th anniversary. *Id.* The company allegedly misled the public to believe this growth would be sustained, even though the company knew the surge in sales from the anniversary promotion would be short-lived. *Id.*

During early 1999, Racing Champions' sales were impaired. *Id.* ¶ 20. Dying enthusiasm over the company's anniversary and introduction of Star Wars merchandise in April 1999 decreased sales

---

[2]Shaffer filed a separate motion to dismiss and supporting memorandum of law but also adopts the memorandum of law submitted in support of co-defendants' motion to dismiss.

and contributed to an increase in returned merchandise. *Id.* In addition, Racing Champions' acquisition and integration of Ertl, a manufacturer of die-cast miniatures and model kits, forced the company to make significant expenditures. *Id.* Racing Champions acquired Ertl in February 1999. *Id.* ¶ 31. Racing Champions guaranteed Ertl an additional cash payment or additional stock if Racing Champions' stock fell below a $14 average trading price in the 20 days preceding the closing date of the acquisition. *Id.*

Racing Champions allegedly failed to disclose material adverse information to the public during the class period. The company did not disclose it was deviating from its publicly-stated policy of refusing to accept returns of unsold merchandise from retailers. *Id.* ¶¶ 21-23. In addition, the company failed to inform the public it was having problems manufacturing and selling Ertl's products after the acquisition. *Id.* ¶¶ 24-28.

Despite Racing Champions' alleged financial and manufacturing problems, defendants made numerous positive statements in 1999 about the company's performance and financial standing. *Id.* ¶ 30. On February 1, Racing Champions stated the agreement between Ertl and Racing Champions will result in "a very synergistic acquisition;" *Id.* ¶ 32. On February 23, the company stated (1) the business expansion that began in 1998 will continue in 1999; (2) sales remain at an all time high; (3) orders for the 1999 product line "have been excellent;" and (4) the company should be able to "again produce a year of strong growth." *Id.* ¶ 34. The company stated on February 24 it believed the company would deliver 18-20% earnings growth over the next two years. *Id.* ¶ 35. On March 29, the company stated, "Racing Champions does not sell its products on consignment and ordinarily accepts returns only for defective merchandise." *Id.* ¶ 37. On April 13, the company stated, "We are very optimistic about our outlook for our tenth anniversary year . . . NASCAR, which underlies

3

the core of our business is riding a wave of popularity that shows no signs of cresting." *Id.* ¶ 38. On April 14, the company stated, "We look forward to leveraging our already well known brand identities across the wider distribution channels to further heighten our profile..." *Id.* ¶ 40. On June 3, the company held a conference with analysts, which J.C. Bradford & Co. publicly described as "rather positive." *Id.* ¶ 47.

On June 23, 1999, Racing Champions publicly announced it expected to report a loss in the range of $0.30 to $0.35 per diluted share for the second quarter of 1999, which ended June 30. *Id.* ¶ 50. The company further stated it was taking a restructuring charge of approximately $6 million as a result of the Ertl integration. *Id.* The next day, the value of Racing Champions shares dropped more than 60% and the company's perceived value declined by more than $167 million. *Id.* ¶ 51. Between February 3, 1999 and June 21, 1999, the value of Racing Champions stock ranged from $11 to $17 per share. *Id.* ¶ 8. On June 21, the stock was valued at $16.75 per share. *Id.* This value dropped to approximately $7 on June 23. *Id.* Racing Champions stock price has not exceeded $8.125 since June 23. *Id.* ¶ 57. The stock price closed at $1.5625 on September 1, 2000. *Id.*

## DISCUSSION

### I    Motion To Dismiss Standard

In ruling on a motion to dismiss, the court considers "whether relief if possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim may not be dismissed if there is a set of facts that, if proven, would entitle a plaintiff to relief. *Trans All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1426 (7th Cir. 1996). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d

4

1510, 1520 (7th Cir. 1990). However, a court is not required to accept conclusory allegations as true. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir. 1994).

## II  Rule 9(b) and PSLRA Pleading Standards

Rule 9(b) requires plaintiffs to state with particularity the circumstances on which they base their claims of fraud. *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). Specifically, plaintiffs must identify (1) who made the misrepresentation; (2) the time, place, and content of the misrepresentation; and (3) the method used to communicate the misrepresentation. *Id.* at 923. Rule 9(b) is meant to ensure defendants receive fair notice. *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 405 (7th Cir. 1984).

The PSLRA requires a complaint to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). In addition, the complaint must "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2).

## III  The Rule 10b-5 Claim

In order to establish a violation under Rule 10(b)(5), plaintiffs must prove: (1) defendants made or certified false statements or omissions; (2) the misrepresentations were material; (3) the defendants acted with scienter; (4) the misrepresentations were made in connection with the purchase or sale of a security; (5) plaintiffs relied upon the misrepresentations; and (6) the reliance caused damage to the plaintiffs. *Danis v. USN Communications, Inc.*, 73 F. Supp. 2d 923, 936 (N.D. Ill. 1999). *See also Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 494 (7th Cir. 1986).

Plaintiffs plead fraud with sufficient specificity to meet the requirements of Rule 9(b) and the PSLRA. Plaintiffs satisfy Rule 9(b) because they identify the content of each allegedly misleading public statement, the dates the statements were made, the persons responsible for the statements, and the methods used to communicated the statements. Defendants have adequate notice of the claims asserted against them.

Plaintiffs have satisfied the requirements of the PSLRA because they have (1) specified the allegedly misleading statements and reasons why they are misleading, and (2) stated with particularity facts giving rise to a strong inference of scienter.

### A. Misleading Statements

Plaintiffs offer reasons why each Racing Champions statement was misleading. Plaintiffs go into great detail in their complaint, but in general they claim each statement was misleading by suggesting Racing Champions would continue to prosper when defendants knew the company was actually in financial trouble. If the facts establish these statements were false at the time the statements were made or the statements went uncorrected after subsequent events rendered them false, a reasonable trier of fact could conclude they are materially misleading.

### B. Scienter

In order to prove scienter, plaintiffs must establish defendants acted with an intent to deceive or with recklessness. *Barker*, 797 F.2d at 495 (citing *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1040 (7th Cir. 1977)). In order to establish intentional deception, a plaintiff must do more than show the defendant had knowledge of the undisclosed facts. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 946 (7th Cir. 1989) (citations omitted). The plaintiff must also show the danger of misleading buyers was "actually known or so obvious that any reasonable man would be legally bound as

6

knowing." *Id.* Recklessness must be so extreme that intent can be inferred. *Searls v. Glasser*, 64 F. 3d 1061, 1066 (7th Cir. 1995). When there is no direct evidence of scienter, plaintiffs may offer circumstantial evidence that supports a reasonable inference of intent to deceive. *Alra Laboratories, Inc.*, 1999 WL 160710, at *8. In considering circumstantial evidence, courts focus on whether the defendants would benefit from the fraud. *Robin v. Arthur Young & Company* 915 F.2d 1120, 1126 (7th Cir. 1990).

Plaintiffs allege motive and opportunity for defendants to commit a 10b-5 violation. These allegations may create an inference of scienter. *Danis*, 73 F.Supp.2d at 937. Specifically, plaintiffs allege defendants' agreement with Ertl would cost them more money if the value of Racing Champions stock fell below a certain price in the days preceding the actual acquisition. In addition, plaintiffs allege Shaffer sold over half of his stock during the class period. This sale suggests Shaffer had a reason to keep the value of the shares artificially inflated. In regard to opportunity, it is undisputed defendants were in charge of Racing Champions' operations and controlled statements issued on the company's behalf. Accordingly, plaintiffs have alleged sufficient facts that, if proven, could support a reasonable inference of scienter. Plaintiffs' 10b-5 claim satisfies the requirements of Rule 9(b) and the PSLRA.

**IV    Section 20(a) Claim**

Defendants are liable under § 20(a) if they control any person or company found to have violated 10b-5. *Harrison v. Dean Witter Reynolds, Inc.*, 79 F.3d 609, 614 (7th Cir. 1996). Plaintiffs claim defendants had control over the decision-making of Racing Champions, including the public statements issued on the company's behalf during the class period. Cmplt. ¶¶ 96-97. Because

plaintiffs allege control liability along with facts sufficient to establish a 10b-5 claim, their § 20(a) claim must not be dismissed.

## CONCLUSION

Defendants' motions to dismiss are denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

November 20, 2000